Filed 7/23/26  P. v. Hoskins CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D088201 |
| Plaintiff and Respondent, | (Super. Ct. No. INF1802262) |
| v. | |
| CASSANDRA OTHELIA HOSKINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Samah Shouka, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Donald W. Ostertag and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

## I.   INTRODUCTION

The People charged Cassandra Othelia Hoskins with assault, sexual penetration, and criminal threats.  These allegations resulted from a 2017 incident during which Hoskins attempted to coerce fellow inmate P.G. to retrieve drugs from a hospital bathroom and bring them into jail.  The plan called for Hoskins to cut P.G.'s head open with a razor blade, requiring jail officials to send P.G. to the hospital for treatment.  Once at the hospital, P.G. would retrieve the drugs and bring them surreptitiously back to the detention facility.  However, after her hospital treatment, P.G. did not provide the drugs to Hoskins after returning to jail.  Consequently, soon after, Hoskins confronted P.G., slamming P.G.'s head against the shower wall and searching P.G.'s vagina with a plastic spoon for the drugs while P.G. lay unconscious on the floor.

The trial court permitted the People to introduce evidence at trial of a 2019 incident involving Hoskins's coercion of another inmate to retrieve drugs from a methadone clinic bathroom during that inmate's weekly appointment.  Hoskins now contends the trial court abused its discretion by admitting the 2019 event as evidence, arguing the subsequent incident was not similar because it did not involve assault or sexual penetration and was inflammatory resulting in undue prejudice.  Finding no abuse of discretion, we affirm.

## II.   BACKGROUND

In October 2017, P.G. was in custody in Riverside county.  In her housing unit, a group of around 30 inmates lived in the same open room.  Inmates did drugs there.  In the housing unit, Hoskins was in charge.  She controlled the television, determined what the inmates did each day, and distributed illicit drugs to inmates.  On October 9, Hoskins told P.G. that

P.G. would be retrieving drugs from the hospital for Hoskins. In exchange, Hoskins would provide P.G. protection. P.G. agreed out of fear that Hoskins would hurt her. Hoskins described for P.G. the individuals who would bring the drugs to the hospital. She instructed P.G. to go to the restroom after she saw them and retrieve the contraband, which would be taped under or behind the toilet. Hoskins cut the back of P.G.'s head open with a razor blade so she would be sent to the hospital. Hoskins told the deputies P.G. fell off the bed.

Deputies transported P.G. to the hospital. When she saw the individuals Hoskins described, P.G. went to the restroom as instructed while the male deputy with her waited outside. She found the package taped to the side of the toilet and flushed it down the drain. She received treatment for her cut and on October 11, returned to jail. P.G. told Hoskins she did not obtain the package.

Subsequently, P.G. heard Hoskins on the phone, angry because she learned that the package was no longer at the hospital. Hoskins then aggressively confronted P.G. asking what happened, and P.G. told Hoskins she flushed the drugs down the toilet.

On October 12, 2017, another inmate brought P.G. into the shower and asked if P.G. had the drugs. Hoskins came in. The other inmate left, and Hoskins slammed P.G.'s head against the shower, leaving her unconscious. When she woke up, she was lying on the floor of the shower with her pants down, and Hoskins had one hand and a plastic spoon in P.G.'s vagina and the other hand over P.G.'s mouth. When Hoskins stopped, she threatened to kill P.G. and hurt her children if she told anybody or if the housing unit was searched. Hoskins then nodded at another inmate, who came over and started punching P.G., pulling her hair, and kicking her.

3

Law enforcement arrived at the housing area after which they took P.G. to a hospital. At the hospital, a nurse performed a Sexual Assault Response Team (SART) examination on P.G. P.G. told the nurse hands were placed around her neck, her head hit against a shower wall, and a plastic spoon scraped inside her vagina looking for drugs. The examination showed bruising on P.G.'s thigh, on her face, and around her ears, neck pain and tenderness, and lacerations to her genital area. P.G. described her genital pain as a 10 out of 10 and consequently could not complete an internal examination.

The People charged Hoskins with two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); counts one [October 9 incident] and two [October 12 incident]); sexual penetration against a victim's will (Pen. Code, § 289, subd. (a)(1); count three); sexual penetration of an unconscious person (Pen. Code, § 289, subd. (d); count four); assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4); count five); and criminal threats (Pen. Code, § 422; count six).

Prior to trial, the prosecution moved pursuant to Evidence Code[1] section 1101, subdivision (b) to admit evidence of a 2019 incident when Hoskins had another inmate pick up drugs from a medical clinic. The defense opposed, arguing the subsequent incident occurred after the charged incident, was not similar to the charged incident, would confuse the jury, and was more prejudicial than probative. The court admitted the evidence, finding it had enough similarity to show a common scheme or plan because it involved smuggling drugs into jail by threatening family members of inmates and those inmates retrieving drugs from bathrooms in medically necessary,

---

[1] Undesignated statutory references are to the Evidence Code.

4

outside locations. The admitted evidence of a common plan included a later statement by Hoskins showing consciousness of guilt.

Thus, at trial, in addition to hearing evidence of the October 9 and October 12, 2017 incidents, the jury heard evidence about Hoskins's 2019 scheme to smuggle drugs into jail. In that incident, Hoskins asked inmate A.H. to pick up a package of methamphetamine when A.H. went for treatment at a methadone clinic. A.H. told Hoskins multiple times she did not want to do it, but Hoskins threatened to "cut" A.H. and her family. After the threats to her family, A.H. agreed. Sheriff's investigators, who had discovered the plan, found the package taped under the bathroom sink at the methadone facility. They left the package there, and A.H. later retrieved it from the clinic restroom. Knowing she had the package, the investigators confiscated it upon her return to jail. The package contained 50 grams of methamphetamine.

In 2025, deputies found a note related to the 2019 incident in a book Hoskins was sending out of the jail. The note read: "It was vital to have [A.H.'s cellmate] say it was [A.H.]'s idea. She asked me to help her, told me how and where to do it. And when she got caught, she blamed me because she was scared they would stop her from getting her Methadone."

At the trial's conclusion, the court gave the jury CALCRIM No. 375, limiting the use of evidence of a defendant's other acts. The jury found Hoskins guilty of the lesser included offense of simple assault (Pen. Code, § 240) on count one and guilty on counts two, three, four, and six. The court dismissed count five after the jury failed to reach a verdict. The court sentenced Hoskins to seven years and eight months in prison, consisting of a six-year term on count three (the middle term), a concurrent 160-day term on count one, a consecutive one-year term on count two (one-third of the middle

term), a stayed term of six years on count four, and a consecutive eight months on count six (one-third of the middle term).

### III. DISCUSSION

Hoskins contends the court erred by admitting the evidence of the 2019 incident because: (1) it was not sufficiently similar to the charged crimes to be admissible under section 1101, subdivision b; and, (2) it should have been excluded under section 352 as "highly inflammatory." We disagree.

Section 1101, subdivision (a) precludes admission of "evidence of a person's character or a trait of his or her character . . . when offered to prove his or her conduct on a specified occasion." Notwithstanding that rule, a defendant's other acts are admissible "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity . . .) other than his or her disposition to commit such an act." (§ 1101, subd. (b).) "To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403 (*Ewoldt*).)

Section 1101, subdivision (b) evidence, however, is subject to exclusion under section 352 "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Undue prejudice does not exist when evidence is simply damaging to a defendant's case; rather, undue prejudice requires " 'evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1276–1277 (*Hollie*).)

6

We review the admission of evidence under sections 1101 and 352 for abuse of discretion.  (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)  Under that standard, " ' "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "  (*Id.* at pp. 1328–1329.)

First, the trial court did not abuse its discretion by finding a common plan between the events resulting in the charged crimes and the 2019 events.  Both involved Hoskins exerting her authority and using threats to coerce other inmates to pick up drugs from restrooms of medical facilities.  Hoskins contends there was not sufficient similarity because in the instant case prosecutors charged her with assault and sexual penetration, neither of which were involved in the 2019 incident.  But section 1101, subdivision (b) merely requires relevance to prove "some fact" other than the defendant's disposition to commit an act, not all facts necessary to the charged offense.  (See *People v. Scully* (2021) 11 Cal.5th 542, 587 [finding no abuse of discretion in the admission of evidence of prior robberies that "shared several similarities with the instant offense" despite "some differences"].)  The occurrence of the 2019 drug smuggling incident was relevant to establish that the 2017 drug smuggling event occurred as part of a common plan to bring drugs into the jail and to explain Hoskins's motive for the assault and sexual penetration as related by P.G.  Hoskins committed the assaults—cutting P.G.'s head open with a razor blade to get her to the hospital where the drugs would be located, and slamming her head against the shower—and the sexual penetration—searching P.G.'s vagina for the drugs while unconscious—in furtherance of the drug smuggling scheme.  Even though injuring A.H. was not necessary because she had preexisting medical

7

appointments and what she did with the drugs was different from P.G., the trial court reasonably found both incidents involved a common plan in Hoskins's forcing other inmates to pick up packages from medical facility restrooms.[2]

Second, the trial court did not abuse its discretion by declining to find the probative value of the 2019 evidence was substantially outweighed by undue prejudice. The 2019 incident was highly probative of the charged offenses because of the common drug smuggling plan. (See *Ewoldt*, *supra*, 7 Cal.4th at p. 404.) The evidence of the subsequent incident came from an independent source, further increasing the probative value. (*Id*. at pp. 404–405.) Any "fundamental[ ] dissimilar[ity]" based on what happened to the drugs is irrelevant to the probative value of Hoskins's common plan. And, contrary to Hoskins's assertion that the 2019 incident was "highly inflammatory," her threats against A.H. were unlikely to inflame the emotions of the jury in comparison to her threats to P.G. followed up with intentionally cutting open her head, slamming her head against the shower, and searching her vagina with a plastic spoon. (*Id.* at p. 405 ["The testimony describing defendant's uncharged acts, however, was no stronger and no more inflammatory than the testimony concerning the charged offenses. This circumstance decreased the potential for prejudice."].) Further, "[t]he jury was given an effective instruction by the trial court to consider the evidence only for proper limited purposes, and we must presume the jury adhered to the admonitions." (*Hollie, supra*, 180 Cal.App.4th at p. 1277.)

---

[2]    To the extent Hoskins makes a separate argument in her reply brief regarding admissibility of Hoskins's note about the 2019 incident, she forfeited this argument by failing to raise it in her opening brief. (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93.)

8

## IV.    DISPOSITION

The judgment is affirmed.


                                                                RUBIN, J.

WE CONCUR:


DO, Acting P. J.


BUCHANAN, J.